UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ELIZABETH ALERS,

                    Plaintiff,

        — against —

NEW YORK CITY HUMAN RESOURCES
ADMINISTRATION,
                    Defendant.
----------------------------------------------------------X

**MEMORANDUM and ORDER**

06-CV-6131 (SLT)(LB)

**TOWNES, United States District Judge**[1]**:**

Plaintiff, Elizabeth Alers ("plaintiff" or "Alers"), commenced this action *pro se* against her employer, defendant New York City Human Resources Administration ("defendant" or "HRA"), pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), alleging that defendant discriminated against her on the basis of her disability by failing to accommodate her disability and unlawfully retaliating against her. Now, defendant moves for summary judgment against plaintiff pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, asserting that plaintiff's claims of harassment are time-barred by the applicable statute of limitations and plaintiff is unable to set forth a *prima facie* case of retaliation. For the reasons set forth below, defendant's motion is granted.

## *BACKGROUND*[2]

In 2003, plaintiff was employed by Tri-State Employment Agency ("Tri-State"), and she was assigned to work as a consultant for HRA under the supervision of Theresa Cummings. Deposition of Elizabeth Alers ("Alers Depo."), pp. 17, 39. In October of 2003, while she was

---

[1] The Court wishes to acknowledge the capable assistance of a student intern, David G. Buffa of Brooklyn Law School, in the preparation of this Memorandum and Order.

[2] The following facts are drawn from the plaintiff's deposition as well as the parties' affidavits, exhibits, and Rule 56.1 statements. Unless otherwise indicated, the facts are undisputed.

still a consultant, plaintiff injured her left thumb during an attempt to remove a paper jam from a printer. The thumb immediately exhibited some swelling and discoloration, to which the plaintiff applied ice. She first sought treatment for the injury in March 2004, and eventually underwent surgery and several weeks of physical therapy thereafter. At her deposition, she explained that the injury does not affect her ability to perform her duties at work, but she occasionally experiences some pain in her thumb. Alers Depo., pp. 93-96. According to plaintiff, the injury is permanent in the sense that she does not expect to recover full strength in her left hand. *Id.*, p. 94.

Sometime prior to plaintiff's surgery, she filed a claim for workers' compensation. Alers Depo., pp. 14, 89. On May 5, 2006, after a hearing, the New York Workers' Compensation Board awarded plaintiff $10,500 for her disability. *See* Declaration of Jamie M. Zinaman, Esq. dated January 11, 2008 ("Zinaman Decl."), Exh. C (Workers' Compensation Board Decision). Since plaintiff sustained her injury while a consultant for HRA, the award was attributed to her employer at the time, Tri-State. Alers Depo., pp. 12-13.

On November 3, 2003, approximately one month after she sustained her injury, plaintiff was hired as a provisional employee of HRA. She was initially assigned to work at the Management Information Systems ("MIS") Computer Help Desk, a department under the supervision of Cummings, where plaintiff answered phones and assisted callers with computer problems. Initially, Cummings and plaintiff enjoyed a friendly relationship.

However, in March of 2004, when plaintiff began treatment for her thumb, the problems set forth in the complaint began. Plaintiff's treatment, including surgery and physical therapy spanned over six months, and resulted in numerous absences from the office. Specifically, in

2

2004, plaintiff took 348 hours of leave time for medical and personal reasons. *See* Zinaman Decl., Exh. G (Plaintiff's Leave Request Entry Report for 2004). With the exception of two occasions, plaintiff's leave requests were never denied.[3] Each time plaintiff took leave from work, according to company policy, she was required to enter the requested leave into AutoTime, the company time system. During this period, Cummings would regularly inquire as to plaintiff's whereabouts even though plaintiff had inputted her appointment in AutoTime. After two months of therapy, plaintiff's physicians concluded that her thumb required surgery, and plaintiff underwent an operation on August 26, 2004.

On August 30, 2004, plaintiff returned to work. She asked Cummings to change her arrival and departure times so that she could avoid the crowds on subways during rush hour while she had a cast on her arm. Cummings informed plaintiff that she would change the schedule, but not without proper medical documentation from the hospital. Subsequently, on September 3, 2004, Cummings changed plaintiff's work schedule after receiving a letter from her doctor. Plaintiff requested no other accommodations for her injury.

During her deposition, plaintiff testified that the bulk of her claims are premised on her belief that Cummings regularly subjected her to excessive scrutiny and allegedly discriminatory practices. Plaintiff cites as an example an incident in September of 2004, when Cummings divided a monthly task among all employees in the MIS department, which required plaintiff to print vendor invoices from a computer database. Plaintiff had completed the project before and knew what tasks were involved. Due to her injury, plaintiff could only use one hand, and the

---

[3]According to plaintiff, one of the two denied requests was for non-medical leave, and she was unable to recall when or why the second request was denied. Alers Depo., pp. 60-61, 124.

task took her longer than the other employees at the help desk. Even though she did not request additional time at the outset, plaintiff was not penalized for taking longer. However, Cummings told her multiple times that co-workers had already completed their portion of the assignment, and regularly asked plaintiff if she had finished. As another example of Cummings' allegedly discriminatory conduct, plaintiff contends that Cummings should have helped her complete her claim for workers' compensation, but she actively refused to help. Alers Depo., pp. 92-93. However, plaintiff also admits that she learned from the HRA personnel department that they could not help her complete the claim for workers' compensation because she sustained her injury while still employed by Tri-State, not HRA. *Id.*

Plaintiff further complains that, while being supervised by Cummings, she was allowed to take only two 15-minute breaks in addition to her lunch hour while her colleagues were permitted to leave their desks as they pleased. Although plaintiff acknowledges that HRA policy limited all employees to two 15-minute breaks, she argues that she was penalized by being required to obey company policy while others were not.[4] Plaintiff also contends that Cummings asked co workers to check up on her when she left her desk. However, she also concedes that when she left her desk, co-workers were often unable to tell whether she was leaving for the day or merely taking a short break because she would habitually take all of her belongings with her – including her coat, hat, and multiple bags of personal items.[5] On one occasion, plaintiff states

---

[4]During plaintiff's deposition, when she was asked if she would leave her desk without notifying her manager, plaintiff stated that "I went to breaks, scheduled breaks – not scheduled breaks. I had breaks, and everybody took them." Alers Depo., p. 68. After a follow-up question, plaintiff clarified, stating that, "Everybody took their breaks and they went three to four times downstairs. I only took two breaks, one in the morning and one in the afternoon." *Id.*, p.69.

[5]This habit of taking her personal belongings to the restroom stems from an incident that occurred while she worked at the help desk. After assisting in another department for three days, plaintiff returned

4

that a co-worker, May Nga, entered the ladies room to see if plaintiff was still in the office. Alers Depo., p. 75.

In January of 2005, plaintiff was transferred from her position at the MIS Computer Help Desk to the MIS Telecommunications Help Desk. The telecommunications help desk was located in the same room as the computer help desk. Plaintiff's salary and benefits remained the same, but the new position required her to assist people with telephone problems rather than computer problems. She considered this transfer a demotion because she was trained in computers and inexperienced in the field of telephones. Alers Depo., p. 23. However, plaintiff acknowledges that HRA informed her that she was transferred because the telecommunications help desk was understaffed. *Id.*, p. 57.

After being transferred to the telecommunications help desk, plaintiff was assigned to work next to and be trained by a co-worker, Gary Woolnough. During the course of her training, plaintiff alleges that Woolnough used offensive phrases, such as "ass backwards," and often criticized plaintiff for not understanding customers' problems. Alers Depo., p. 78. On one occasion in early 2005, Woolnough tried to transfer a call to plaintiff, but she had left her desk to use the restroom. When plaintiff returned, Woolnough confronted her and told her that she was "crazy and needed q-tips." *Id.*, p. 79. In addition to this specific example, plaintiff states that generally, all her co-workers exhibited rude behavior towards her. *Id.*, p. 119. As an example, she cites the conduct of co-workers who engaged in horseplay near her desk and who engaged in conversations behind her while she was on the phone, making it difficult for her to hear

---

to her desk to find that her stapler, staple dispenser, and chair were broken. The items were quickly replaced, and plaintiff never reported the incident to her supervisors. However, she believes one or more co-workers broke the items, but admits that many people had access to the area during the three-day period. Alers Depo., pp. 71-72.

customers' complaints. *Id.*, p. 115. This rude behavior, plaintiff contends, was attributable to orders from Cummings to treat her badly. *Id.*, p. 87.

On June 11, 2005, five months after she began her new assignment, plaintiff filed a grievance with her union for an out-of-title transfer. The grievance was sustained on October 31, 2005, and HRA was directed to assign plaintiff to duties consistent with her qualifications. She was not transferred from the telecommunications help desk until February of 2006.[6] According to HRA, plaintiff remained at the desk because of staffing needs. Plaintiff contends that she was unable to transfer because Cummings blacklisted her among the other help desk departments. Plaintiff's Response to Defendant's Argument, pp. 30-31, annexed to Affidavit of Elizabeth Alers sworn to February 11, 2008 ("Alers Aff.").

On March 20, 2006, plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), alleging discrimination and harassment based upon a disability and retaliation for opposing and reporting the discrimination and harassment she suffered. On September 28, 2006, the NYSDHR issued a determination and order finding that plaintiff was not discriminated against based on a disability and that her transfer was not a demotion since the reassignment was due to staffing needs. The NYSDHR further found no evidence to indicate that plaintiff was retaliated against as a result of her opposition to and report of her alleged harassment.

On October 19, 2006, the United States Equal Employment Opportunity Commission ("EEOC") mailed a Right to Sue letter to plaintiff, notifying her that it had adopted the findings

---

[6]In February of 2006, plaintiff was transferred to the New York City Way Help Desk, where she currently works. The New York City Way Help Desk is another division of HRA.

of the NYSDHR and dismissed her complaint. Subsequently, on November 13, 2006, plaintiff commenced the instant action claiming that defendant discriminated against her in violation of the ADA and retaliated against her for filing a claim for workers' compensation in violation of the ADA. Both parties have conducted discovery and HRA now moves for summary judgment on all of plaintiff's claims.

## DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World*, 922 F.2d at 121 (internal quotation marks and citations omitted). Moreover, the non-movant cannot rely on hearsay testimony which would not be admissible if testified to at trial. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999); *see also* Fed. R. Civ. P. 56(e). When evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 87 (2d

7

Cir. 1998) (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Although the same summary judgment rules apply to a party proceeding *pro se*, special latitude is appropriate to ensure that a meritorious claim is not foreclosed simply because the papers submitted in opposition to the motion are inartfully worded. *See Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006); *Morris v. Citibank, N.A.*, No. 97 Civ. 2127, 1998 WL 386175, at *2 (S.D.N.Y. July 8, 1998). However, "a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Odom v. Keane*, No. 95 Civ. 9941, 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1995)). The Court thus cannot rely on the movant's Rule 56.1 statements as the sole basis for granting summary judgment; instead, it must determine whether the evidence supports that disposition. *See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-47 (2d Cir. 2004).

### B.  *Plaintiff's ADA Discrimination Claim*

The ADA prohibits employers from discriminating against any qualified individual with a disability on account of the individual's disability.[7] *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001). An employee alleging employment discrimination under the ADA bears the initial burden of establishing a *prima facie* case. *Lidell v. Board of Educ. of City of St. Louis*, 20 F.3d 326, 332 (2d Cir. 2000). To establish a *prima facie* case, the employee must demonstrate that: "(1) [her] employer is subject to the ADA; (2) [she] is disabled within the

---

[7]Under the ADA, a disability is: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such impairment. 42 U.S.C. § 12102(2); *see also Gaines v. NY City Transit Authority*, 528 F. Supp. 2d 135, 145 (E.D.N.Y. Dec. 18, 2007).

8

meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." *Giordano*, 274 F.3d at 747; *see also Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

Here, in support of her ADA discrimination claim, plaintiff argues that she was subjected to harassment and excessive scrutiny by co-workers and her supervisor on account of her injured thumb, and her supervisor failed to accommodate her disability. By its motion for summary judgment, defendant raises two grounds for dismissing plaintiff's ADA discrimination claims: (1) the actions supporting her discrimination claims are time-barred; and (2) she cannot set forth a *prima facie* case of disability discrimination under the ADA. Because the Court finds that plaintiff's claims are time-barred, as discussed below, it will not address defendant's alternative argument for dismissal.

## 1. *Statute of Limitations*

Before a person can file a suit in federal court under the ADA, she must file an administrative charge with the EEOC within 180 days of alleged wrongdoing, or, if the person elects to file a complaint with a state agency instead, she must do so within 300 days of the alleged wrongdoing. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a) (incorporating U.S.C. § 2000e-5(e)(1)). Any wrongdoing that occurred prior to the 300-day limit is time-barred. *See Nat'l Passenger R.R. Corp. v. Morgan*, 536 U.S. 101, 114-16 (2002); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134 (2d Cir. 2003). In the instant case, plaintiff filed her charge with the NYSDHR on March 20, 2006, and, therefore, all of her allegations regarding disability discrimination that occurred prior to May 24, 2005 are time-barred.

To determine which allegations are untimely, incidents of employment discrimination must be categorized as either discrete acts or continuing violations. *See Morgan*, 536 U.S. at 114-16. A discrete act occurs at one particular time, such as a termination, denial of promotion, denial of transfer, or refusal to hire. *Morgan*, 536 U.S. at 111, 114. Each discrete act is a "a separate employment practice . . . even if that action is simply a periodic implementation of an adverse decision previously made." *Elmenayer* 318 F.3d at 134; *see also Morgan*, 536 U.S. at 111 ("There is simply no indication that the term 'practice' [in 42 U.S.C. § 2000e-2] converts related discrete acts into a single unlawful practice for the purposes of timely filing."). A discrete act of discrimination is time-barred if it occurred prior to the applicable limitations period. *Morgan*, 536 U.S. at 113.

By contrast, a continuing violation "occurs over a series of days or perhaps years" and "is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 115, 117. If a plaintiff establishes that one contributing act occurred within the applicable limitations period, all acts contributing to that violation may be timely challenged in the plaintiff's discrimination claim, even those occurring outside of the statutory period. *See Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001); *see also Predun v. Shoreham-Wading River School Dist.*, 489 F. Supp. 2d 223, 228 (E.D.N.Y. 2007) ("Essential to application of the continuing violations theory is the allegation of at least one discrete act of discrimination within the 300 day period."). Stated differently, the statute begins to run on the last discriminatory act in furtherance of the continuing violation. *See Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). For example, a hostile work environment claim encompasses a series of related acts which may not be actionable standing alone and, therefore,

all of the acts are timely if one of the acts supporting the claim is timely. *Morgan*, 536 U.S. at 115-18; *accord Elmenayer*, 318 F.3d at 134-35. Thus, where a plaintiff argues a hostile environment claim, conduct outside the applicable limitations period could be asserted so long as one act giving rise to the claim was within the limitations period. *See Morgan,* 536 U.S. at 117; *see also Carmellino v. District 20 of New York City Dept. of Educ.*, No. 03 Civ. 5942, 2006 WL 2583019, at *8 (S.D.N.Y. Sept. 6, 2006) (noting that the Supreme Court has specified that conduct creating a hostile work environment may constitute a continuing violation).

    a.    *Discrete Acts*

Read in the light most favorable to plaintiff, the record demonstrates that she endured two discrete alleged discriminatory acts.[8] The first occurred when plaintiff's supervisor demanded a doctor's note after her surgery so she could have her arrival and departure schedule changed. This act occurred in September of 2004 – well before the May 24, 2005 limitation period – and is therefore time-barred. The second discrete act alleged occurred when she was transferred to the MIS Telecommunications Help Desk in January of 2005, but it is time-barred as well. Further, there is no basis for applying the equitable doctrine of tolling or estoppel. *See Predun*, 489 F. Supp. 2d at 229 ("Equitable tolling is suitable only in 'rare and exceptional circumstances' in which a party is 'prevented in some extraordinary way from exercising his rights.'") (quoting *Zerilli-Edelglass v. N.Y. City Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003)). Accordingly, the Court cannot consider these alleged discriminatory acts.

    b.    *Continuing Violation*

---

[8]Plaintiff also indicates that Cummings' failure to assist her with her claim for workers' compensation was a discriminatory act, there is no basis for construing this lack of assistance as discriminatory. Even if such conduct could constitute a discriminatory act, Cummings' failure to help occurred sometime prior to August 26, 2004, the date of her surgery, and the allegation is time-barred.

Plaintiff also raises a continuing violation by asserting that, after receiving treatment for her thumb, Cummings created a hostile work environment and recruited plaintiff's co-workers to engage in abusive behavior directed at her. Although the acts supporting her hostile work environment claim must be timely, she must first establish a *prima facie* case of a hostile environment. *See Morgan*, 536 U.S. at 117.

To make a claim for a hostile work environment, plaintiff must show that the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Morgan,* 536 U.S. at 117. However, acts that amount to mere utterances which engender offensive feelings in an employee do not sufficiently affect the conditions of employment to implicate a hostile environment claim. *See Harris v. Forklift Sys. Inc,* 510 U.S. 17, 21 (1993). In addition, a plaintiff must demonstrate that the series of abusive acts occurred as a result of her membership in a protected class. *Id*. Furthermore, on a motion for summary judgment, the nonmoving party "must present concrete particulars and cannot succeed with purely conclusory allegations." *Ford v. NY City Dept. of Health and Mental Hygiene*, 545 F. Supp. 2d 377, 393 (S.D.N.Y. Apr. 23, 2008) (internal quotation marks and citation omitted).

Here, plaintiff argues that she experienced a hostile work environment because she was subjected to excessive scrutiny by her supervisor when requesting leave and her co-workers were generally rude towards her. The acts by her co-workers, which include walking closely by plaintiff's chair, speaking behind plaintiff while she was on the phone, and generally being rude towards plaintiff do not rise to the level of severe and pervasive acts that would make work unbearable for a reasonable person. *See Ford,* 545 F. Supp. 2d at 395 (a female employee who

was subjected to months of co-workers hitting her chair, being referred to as a man, and being called names such as "faggot" and "dyke," did not experience the level of abuse that constitutes a hostile work environment); *Garvin v. Porter,* 367 F. Supp. 2d 548, 566-67 (S.D.N.Y. Apr. 22, 2005) (comments and jokes about a plaintiff's inability to work on Saturdays because of religious obligations were insensitive and offensive, but not severe, pervasive, or insulting enough to constitute an objectively hostile work environment). Also, the comments plaintiff complains of were not physically threatening nor severe. *See Lewis v. N. Gen. Hosp.*, 502 F. Supp. 2d 390, 403 (S.D.N.Y. Aug. 23, 2007) (non-physical conduct that merely "seemed and felt strange" was not severe enough to give rise to a hostile work environment). Lastly, plaintiff cannot establish a hostile work environment because Cummings subjected her to intense scrutiny or criticized her more than other employees. *See Garone v. United Parcel Service, Inc.,* 436 F. Supp. 2d 448, 469 ("the fact that [a supervisor] apparently had an authoritative management style that [the plaintiff], for whatever reason, subjectively viewed as inappropriate does not transform the occasional off-color remark into harassment or strict managerial decision into chauvinism"); *Nugent v. St. Luke's/Roosevelt Hosp. Center*, No. 05 Civ. 5109, 2007 WL 1149979, at *9 (S.D.N.Y. Apr. 18, 2007) (plaintiff cannot establish a hostile work environment by demonstrating that her supervisor subjected her to intense scrutiny and criticized her more than he did other employees).

Moreover, assuming *arguendo* that plaintiff was subjected to severe and pervasive acts, she fails to set forth any evidence that shows how her disability is linked to the behavior exhibited by her co-workers or Cummings. Allegations that fail to demonstrate that the misconduct occurred because of her status in a protected class are not actionable under the ADA.

13

*Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001); *see also Nakis v. Potter*, No 01-10047, 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004) ("Hostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable").

Since plaintiff is unable to establish a *prima facie* case of a hostile work environment claim, she cannot show that defendant committed a continuing violation. Therefore, all of the alleged discriminatory acts that occurred prior to May 24, 2005 remain time-barred. Accordingly, plaintiff's claim of discrimination is dismissed.

### C. Plaintiff's Retaliation Claim

Plaintiff also contends that she was retaliated against for filing a workers' compensation claim, resulting in her transfer to the MIS Telecommunications Help Desk and general mistreatment by her colleagues throughout her employment at the help desk. Under the ADA, employers are prohibited from discriminating against an individual who has "opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203. Courts have analyzed retaliation claims pursuant to the ADA under the Title VII framework. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). Thus, to state a claim for retaliation under the ADA, a plaintiff must show that "(1) he or she was engaged in a protected activity by the [Act], (2) the employer was aware of the activity, (3) the employer took [some] adverse employment action against him or her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002); *see also Kendricks v. Westhab,*

*Inc.,* 163 F. Supp. 2d 263, 270 (S.D.N.Y. Sept. 28, 2001). Defendant does not dispute the first two elements of the retaliation claim.

However, plaintiff is unable to establish the other two elements of a *prima facie* claim of retaliation. With regard to adverse employment action, plaintiff argues that her transfer to the telecommunications help desk was an adverse and material action. However, a material adverse change in employment must be "more disruptive than a mere inconvenience or an alteration of job responsibilities" to rise to the level of severity contemplated by the ADA. *Galabya v. NY City Board of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). A material adverse change is more akin to "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities . . . ." *Id.* (internal quotations omitted). Here, it is undisputed that plaintiff experienced no change in pay, benefits, or responsibilities, but was merely assigned to assist callers with telephones rather than computers. Thus, despite plaintiff's dissatisfaction with her duties at the telecommunications help desk, the transfer was not a materially adverse change under the ADA. *See Morris v. Lindau,* 313 F.3d 102, 113 (2d Cir. 1999) (a transfer unaccompanied by a negative shift in terms and conditions of employment was not a material adverse change); *Booker v. Federal Reserve Bank of New York*, Nos. 01 Civ. 2290, 01 Civ. 2291, 2003 WL 1213148, at *11 (S.D.N.Y. Mar. 17, 2003) ("Typically, lateral transfers or shift changes without a loss of pay or other material changes in working conditions do not constitute an adverse employment action.") (quoting *Richardson v. N.Y.S. Dep't of Correctional Serv.,* 180 F.3d 426, 446 (2d Cir. 1999)). Plaintiff also contends that her co-workers' rudeness was materially adverse, but such action is not recognized as adverse under the ADA. *See Meder v.*

15

*City of New York,* No. 06-CV-504, 2007 WL 2937362, at *8 (E.D.N.Y. Oct. 9, 2007) ("Unjustified criticism and negative evaluations of [the plaintiff] . . . . do not constitute adverse employment actions unless they led to a change in the conditions of employment").

Plaintiff is also unable to demonstrate a causal connection between her application for workers' compensation and the alleged adverse actions. First, there is no causal connection between the hostility she allegedly received from co-workers and the filing for workers' compensation because plaintiff contends that the hostility began when her pre-surgery physical therapy began, but she filed her claim shortly before her surgery, after undergoing physical therapy for months. *See Browne v. City University of New York*, 419 F. Supp. 2d 315, 336 (E.D.N.Y. Nov. 23, 2005) (when the denial for a leave application was made *prior* to an employee's EEOC complaint there can be no causal connection between the decision and the complaint). Moreover, plaintiff sets forth no evidence to demonstrate that HRA or Cummings would be affected by plaintiff's workers' compensation claim,[9] and instead offers vague arguments without any admissible, supporting evidence.[10]

Second, plaintiff has offered nothing more than conclusory arguments to establish that there is a causal connection between her workers' compensation claim and her alleged demotion. Such evidence is insufficient to survive summary judgment. *See Mandell v. County of Suffolk*, 316 F.3d 368, 383-84 (2d Cir. 2003) (finding direct evidence of retaliatory animus in failure to

---

[9]There is no evidence in the record that the award granted to plaintiff for her workers' compensation claim financially affects HRA in any manner since plaintiff was an employee of Tri-State at the time of her injury.

[10]Plaintiff asserts that Cummings did not wish to assist her in filing her workers' compensation application. Alers Depo., p. 92. She does state that she understood that Cummings did not have to help her, and when asked during her deposition why she thought Cummings did not want to help her with filing the claim, plaintiff responded, "I have no idea." *Id.,* pp. 92-93.

16

promote where superiors told the employee that he should learn to "keep his mouth shut" and that "baggage" from his testimony about anti-semitism in the police department could adversely affect his career); *Rose v. N.Y. City Bd. of Ed.*, 257 F.3d 156, 158, 162 (2d Cir. 2001) (employer's comments to plaintiff that he would replace her with someone "younger and cheaper" if she didn't follow his instructions evidence of retaliatory animus). Thus, plaintiff has failed to establish a *prima facie* case of retaliation pursuant to the ADA or set forth any evidence from which a reasonable jury could conclude that she was transferred or treated adversely for filing her workers' compensation claim.

Finally, even if plaintiff had set forth a *prima facie* case of retaliation based upon her transfer, defendant has provided a non-discriminatory reason for the transfer, namely that the Telecommunications Department was understaffed. Defendant' Reply Memorandum of Law ("Reply Mem."), pp. 9-10; *see also* Alers Depo., p. 57. Plaintiff has offered nothing to show that this reason for her transfer is pretextual, and this Court finds defendant's action and reasoning reasonable. *See Blake v. Bronx Lebanon Hospital*, No. 02 Civ. 3827, 2007 WL 2981465, at *10 (S.D.N.Y. Oct. 10, 2007) (the causal link that [the plaintiff] attempts to establish is all the weaker given his failure to demonstrate that racial discrimination, and not the reduction-in-force, was the cause of his termination). Therefore, plaintiff's claim of retaliation pursuant to the ADA is dismissed.

## *CONCLUSION*

For the reasons set forth above, defendant's motion is granted in its entirety and the complaint is dismissed. The Clerk of Court is directed to close this case.

SO ORDERED

Dated: Brooklyn, New York
September 24, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge